Present:  Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy,
Hassell, and Keenan, JJ.

MEGAN D. CLOHESSY

v.  Record No. 942035          OPINION BY JUSTICE HENRY H. WHITING
                                      September 15, 1995

LYNN M. WEILER

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Robert B. Cromwell, Jr., Judge

This appeal deals with issues of a motor vehicle driver's alleged willful and wanton negligence and a pedestrian's alleged contributory negligence.

The defendant driver appeals a judgment confirming a jury's verdict in the plaintiff pedestrian's favor for $85,000. Consistent with familiar appellate principles, we state the evidence in the light most favorable to the pedestrian, who prevailed before the jury.

On October 16, 1992, around 10:00 p.m., after attending a football game at Cox High School in Virginia Beach, Lynn M. Weiler, the plaintiff, was walking home with her husband, Gary Weiler, in a northerly direction on Tether Keep, a street in a Virginia Beach residential subdivision.  Since there were no sidewalks on Tether Keep, and debris had been left on the west side of the street on previous occasions when they had walked on Tether Keep, the Weilers walked on the east side of the street

_____

[1]Justice Whiting prepared the opinion in this case prior to the effective date of his retirement on August 12, 1995, and the Court subsequently adopted the opinion.

with their backs toward approaching traffic rather than on the west side facing traffic, as required by Code § §46.2-928.[2].  Mr. Weiler was walking almost directly in the gutter, next to the concrete curb.  According to Mr. Weiler, his wife was walking to his left "directly shoulder to shoulder next to [him]."

The speed limit on Tether Keep was 25 miles per hour and this flat, relatively straight asphalt street was well-lit by street lights in the vicinity of the accident.  It was a clear night.  Mr. Weiler was wearing a yellow jacket and the plaintiff was wearing a light-gray sweat shirt.

Megan Dawn Clohessy, the defendant, a 16-year-old student at Cox High School who had driven her car in a parade at the football game, stopped the vehicle on Tether Keep just before the accident to remove balloons that had been attached to the antenna.  When the defendant stopped, she turned off the car's engine and headlights.  Upon restarting the engine, the defendant noticed that the windshield had become foggy from a mist rising from the road surface.  She turned on her windshield wipers and defroster in an attempt to clear the windshield.  However, the

_____

[2]As pertinent, Code 46.2-928 provides that "[p]edestrians shall not use the roadways for travel, except when necessary to do so because of the absence of sidewalks [and] [i]f they walk on the hard surface, . . . they shall keep to the extreme left side or edge thereof."

defendant did not turn on the car's headlights again, and drove down the street at a speed of approximately 35 miles per hour with a fogged windshield.

The defendant and a teenaged boy who witnessed the accident estimated that the plaintiff was walking in the street, three to four feet from the curb. The witness was one of several boys, some of whom were approximately 25 feet ahead of the Weilers, also walking from the football game on the east side of Tether Keep. There were no other pedestrians on Tether Keep at the time of the accident.

Although the defendant testified that nothing obstructed her view, she did not see the Weilers walking in the street until her car was about four feet from the plaintiff. The defendant swerved her car to her left, but was unable to avoid striking the plaintiff.

The trial court submitted the issue of the defendant's willful and wanton negligence to the jury. First, we consider the defendant's contention that this was error. The following is the standard to be applied in resolving this issue:

> Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.

Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984).

The defendant contends the evidence in this case is such that no reasonable person could conclude that her conduct was

-3-

sufficiently egregious to meet the Griffin standard of willful and wanton negligence. Hence, the defendant concludes that the court erred in submitting this issue to the jury.

On the other hand, citing the defendant's negligence in operating "her vehicle without headlights at night in a residential area where she knew pedestrians were walking [and in driving] her automobile in excess of the posted speed limit with fogged windows and obscured vision," the plaintiff maintains that the cumulative effect of those acts raised a factual issue of the defendant's willful and wanton negligence under the Griffin standard. We disagree with the plaintiff. The facts in this case do not indicate that the defendant's conduct could be reasonably considered as anything more culpable than ordinary negligence.

On brief and in oral argument, the plaintiff's counsel claimed that the football game had just ended, implying that numerous pedestrians were walking home in the streets of this subdivision. However, Mr. Weiler testified that:

Even though the game was over, because Todd [the Weilers' son] was playing, we typically would wait until after the game and see him, so almost all of the game traffic had already left and we were walking down that street, and it was a very quiet evening, only one car had passed, as I said.

And the plaintiff testified that there was no one else walking on the roadway but the boys ahead of the Weilers. Thus, we find no factual predicate in the record to support the plaintiff's contention that the defendant "knew pedestrians were walking" in

the residential area, particularly pedestrians walking on the wrong side of the street with their backs toward approaching traffic in violation of Code § 46.2-928.

Hence, the evidence in this case does not support a finding that the defendant had prior knowledge of specific conditions that would likely cause injury to others.  Compare Huffman v. Love, 245 Va. 311, 315, 427 S.E.2d 357, 360 (1993) (highly intoxicated driver's knowledge that continued driving was dangerous shown in part by earlier collision shortly before subject collision) and Booth v. Robertson, 236 Va. 269, 270, 272-73, 374 S.E.2d 1, 1, 2-3 (1988) (highly intoxicated driver's knowledge that driving wrong way on interstate highway was dangerous shown in part by near collision with another vehicle shortly before subject collision) with Hack v. Nester, 241 Va. 499, 506-07, 404 S.E.2d 42, 45 (1991) (no prior accident or warning of dangerous driving to intoxicated driver before subject collision).  And this case has none of the aspects of willful and wanton conduct shown in part by (1) the intoxications and prior incidents giving notice of danger in Huffman and Booth, (2) the willfulness in Friedman v. Jordan, 166 Va. 65, 68, 184 S.E. 186, 187 (1936) (motorist's intentional collision with bicyclist), or (3) the grossly excessive speed and erratic driving evident in Mayo v. Commonwealth, 218 Va. 644, 648-49, 238 S.E.2d 831, 831-33 (1977) (driving about twice posted 35 mile-per-hour speed limit in residential area resulting in involuntary manslaughter

conviction).

We have said that "each [of these cases] must be determined `on its own set of facts.'" Huffman, 245 Va. at 315, 427 S.E.2d at 360. In our opinion, while the facts and circumstances of this case raise factual issues of the defendant's negligent operation of her car, they are insufficient to support a finding that this negligence was so willful, wanton, and reckless as to show a conscious disregard of the rights of others. Accordingly, the court erred in submitting that issue to the jury.

Next, we consider the plaintiff's contention that the defendant must show that the jury's verdict was based on a finding of willful and wanton negligence rather than ordinary negligence in order for the error to be prejudicial. However, a substantial error such as this one "is presumed to be prejudicial unless it plainly appears that it could not have affected the result." Spence v. Miller, 197 Va. 477, 482, 90 S.E.2d 131, 135 (1955); see also Dunn v. Strong, 216 Va. 205, 210, 217 S.E.2d 831, 834 (1975); Kimball & Fink v. Borden, 95 Va. 203, 207, 28 S.E. 207, 207 (1897). Thus, the defendant has no burden to show on which issue the jury returned its verdict.

Nor can we say that submitting the issue of willful and wanton negligence to the jury "could not have affected the result" because we are unable to determine on what issue the jury returned a verdict for the plaintiff. If an issue is erroneously submitted to a jury, we presume that the jury decided the case

upon that issue.  Green v. Ruffin, 141 Va. 628, 641, 125 S.E. 742, 746 (1924); see also Gardner v. Phipps, 250 Va. ___, ___ S.E.2d ___ (1995)(this day decided); Ring v. Poelman, 240 Va. 323, 328, 397 S.E.2d 824, 827 (1990).  And if the verdict was based on the defendant's willful and wanton negligence, we presume that the jury did not consider the issue of the plaintiff's alleged contributory negligence, because of the trial court's instruction that "[a] defendant who is guilty of willful and wanton negligence cannot rely upon contributory negligence as a defense."  Since the defendant was entitled to have the jury consider the issue of the plaintiff's contributory negligence as a bar to her ordinary negligence claim, we conclude that the defendant was prejudiced by the instructions on willful and wanton negligence and that the case will have to be remanded for a new trial.

Because the issue may arise upon a new trial, we finally consider the defendant's contention that the court erred in granting Instruction 16 on the issue of the plaintiff's contributory negligence.[3]  Instruction 16 provided:

> When the negligence of the defendant is the proximate cause of the accident and that of the plaintiff the remote cause, the plaintiff may recover

[3]On oral argument, the defendant abandoned her contention that the court erred in failing to instruct the jury that the plaintiff was guilty of contributory negligence as a matter of law.  Hence, we do not consider that issue.

-7-

notwithstanding the plaintiff's negligence.  It is the immediate or proximate cause which directly produces the accident, injury or damage, not the remote cause which may have antecedently contributed to it.

The plaintiff argues that Instruction 16 was proper since it "was taken directly from the language in Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994)."  Although Instruction 16 correctly states the law, it is simply another example of "the danger of the indiscriminate use of language from appellate opinions in a jury instruction; a danger often referred to in our opinions."  Blondel v. Hays, 241 Va. 467, 474, 403 S.E.2d 340, 344 (1991).

The language in Instruction 16 was used in Thomas to explain why the violation of a statute regulating traffic was not a proximate cause of the accident as a matter of law.  It was not written as a definition or explanation of remote cause.  As such, "[i]t was appellate language, used to explain a point and not intended to be employed in an instruction."  National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Bruce, 208 Va. 595, 601, 159 S.E.2d 815, 820 (1968).

In Bruce, we held that after giving the traditional definition of gross negligence in an instruction, the trial court should not have further expounded upon gross negligence in language that was argumentative, confusing, and misleading to the jury.  Id.  Similarly, in this case, the court correctly defined proximate cause in Instruction 15, which provided:
A proximate cause of an accident, injury, or damage is a cause which in natural and continuous

sequence produces the accident, injury, or damage. It is a cause without which the accident, injury, or damage would not have occurred.

In its attempt to further explain the concept of proximate cause in Instruction 16, the court introduced the principle of remote cause and used language that could have confused and misled the jury. Since we conclude that Instruction 16 was erroneous and prejudicial to the defendant, it should not have been given.

Accordingly, we will reverse the judgment and remand the case for a new trial.

<u>Reversed and remanded.</u>